IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Andre Sweeper,<br><br>                Plaintiff,<br><br>vs.<br><br>Vernetia Dozier, Lt. Mathis, Lt. C. Murdock, Lt. Rhodan, Sgt. T. Tice, Sgt. Brown, C/O Copeland, C/O T. Owens, C/O Brown, C/O Davis, C/O Cynthia E. Green, C/O Randall, and Ms. Angie,<br>                Defendants. | C/A No. 1:20-cv-2545-SAL-SVH<br><br><br>**OPINION AND ORDER** |

    Plaintiff Andre Sweeper ("Plaintiff"), a state pretrial detainee, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings.

    After reviewing Defendants' joint motion for summary judgment, ECF No. 44, and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that summary judgment should be granted as to all Defendants on all claims. [ECF No. 51.] The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a full recitation.

    Plaintiff filed objections to the Report on September 1, 2021, to which Defendants replied on September 14, 2021. [ECF Nos. 52 & 53.] Thus, this matter is ripe for review.

**STANDARD OF REVIEW**

    The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

1

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009, 288 F. Supp. 3d 654, 662 n.6 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## DISCUSSION

Through this action, Plaintiff, a pretrial detainee, seeks to recover damages for a detention center's alleged failure to provide him with seizure medication and physical therapy and for its failure to repair a piece of metal on which Plaintiff lacerated his hand. As stated above, the Report recommends summary judgment in favor of Defendants on all claims. In response to the Report, Plaintiff enumerated 23 separate objections. [ECF No. 52.] Although most of these objections appear to be mere disagreements with the Magistrate Judge's conclusions supported by a rehashing of those arguments previously presented, the Court will nevertheless address each argument seriatim.

As an initial matter, the Court notes that throughout this litigation Plaintiff has continually failed to address each individual Defendant or specifically identify wrongdoing attributable to any one individual. [ECF No. 51, p. 14 ("Plaintiff's claim fails for the primary reason that he had failed to identify any specific Defendant who interacted with him during this time period.").] Although sporadic refences to certain Defendants can be found throughout the relevant briefs, Plaintiff more often paints with a broad stroke in an attempt to implicate all Defendants for any alleged wrongdoing. Because this action sounds in § 1983, each Defendant can only be held accountable for his or her own individual actions in relation to Plaintiff. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("[T]he official's own individual actions must have violated the Constitution.") (internal quotations omitted). Accordingly, Plaintiff's repeated objections referring only to "Defendants," with no specific identification of which individual is being referenced, do little, if anything, to aid in this Court's analysis or salvage his claims.

3

**Objection 1**

Plaintiff's first objection takes issue with the Report's conclusion that Plaintiff, while detained, sought treatment for mental health. Plaintiff submits the Magistrate Judge failed to acknowledge record evidence that Plaintiff was instead attempting repeatedly to obtain seizure medication.

A review of the Report indicates that the Magistrate Judge appropriately found that Plaintiff "informed OCDC staff that he needed to take his prescription medication for seizures." [ECF No. 51, p. 3]. Additionally, the Report also notes Plaintiff's contention that he requested to see mental health professional Dr. Berry, not necessarily for mental health reasons, but to request medication. [ECF No. 51, p. 6]. Accordingly, the Report considered and acknowledged Plaintiff's attempts to obtain seizure medication, and this objection is without merit and is therefore overruled.

**Objection 2**

Plaintiff next objects to the "factual findings to the extent that they do not verify or establish a near month long gap between Defendants' knowledge of Mr. Sweeper's seizure history and his need for prescribed medication and his first round of seizures." [ECF No. 52, p. 1].

As noted above, Plaintiff references only "Defendants" as opposed to any specific individual. Accordingly, the Court cannot assess which Defendant Plaintiff avers had the specific knowledge identified. Thus, this objection lacks merit. Moreover, the Report states that it is "undisputed that between Plaintiff being booked into OCDC on July 8, 2017, until the one or more seizures that occurred on July 29 and 30, 2017, Plaintiff was not provided seizure and/or high blood pressure medication." [ECF No. 51. p. 14]. Thus, the "near month long gap" is indeed identified in the Report.

**Objection 3**

Plaintiff's third objection avers that the Magistrate Judge "failed to account for the record evidence indicating that the Facility policy required the Defendants to regularly monitor and check Mr. Sweeper" on the night he had multiple seizures.

Plaintiff's objection fails to account for the fact that the standard governing his Fourteenth Amendment claim is deliberate indifference to a serious medical need and not adherence to internal policies and procedures. Alleged failures to comport with internal policies and procedures do not themselves create a constitutional violation. *See Jackson v. Sampson*, 536 F. App'x 356, 357–58 (4th Cir. 2013) ("Moreover, prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation. Therefore, any failure by prison officials to follow internal correctional policies is insufficient, without more, to support Jackson's claim [of deliberate indifference]."). Thus, this objection fails to identify any error in the Report which would warrant amendment.

**Objection 4**

Plaintiff's fourth objection takes issue with the Magistrate Judge's failure to give proper "credence" or evidentiary value to unidentified roommates who noted Plaintiff had multiple seizures on the night in question. This objection is wholly meritless as the Report clearly notes that the Magistrate Judge "assum[ed] without deciding that Plaintiff did have multiple seizures in the night" based on testimony from these roommates. [ECF No. 51, p. 17]. The Report nevertheless concluded that Plaintiff failed to identify a specific Defendant who knew on the night in question that Plaintiff was prone to seizures, actively having seizures, and chose not to render aid. The Report's conclusion was correct, and the objection is overruled.

**Objection 5**

Plaintiff next objects to the Magistrate Judge's factual finding that "[Mr. Sweeper] failed to identify a specific defendant who knew, on the night in question, or had reason to suspect, [Mr. Sweeper] was prone to seizures and deliberately chose to not render him aid." [ECF No. 52, p. 3.] Plaintiff avers that Defendant Mathis was on duty on the night or morning in question and further that her testimony referencing "they" and "all" should work to impute knowledge of Plaintiff's seizure disorder to all officers working on the night in question.[1] However, here again, Plaintiff fails to identify which specific officers, other than Mathis, were allegedly working on the relevant night.

As to Mathis, Plaintiff's objection asserts that Plaintiff argued "in response to Summary Judgment that Lieutenant Arelia Mathis [ ] was: (a) on duty on the night and/or morning in question." [ECF No. 52, p. 3.] However, a review of Plaintiff's opposition brief shows no such argument was made. [ECF No. 47]. Additionally, a review of Mathis's deposition transcript, as cited by Plaintiff, does not show that Mathis was working on the night or morning in question. [ECF No. 47-4, p. 23:2-13; 89:13-1.5] In fact, a review of Mathis's testimony indicates that she denied being present for Plaintiff's reported seizure. [ECF No. 47-4, p. 93.] Accordingly, Plaintiff failed to show that the Magistrate Judge's conclusion that Plaintiff "failed to identify a specific

---

[1] Plaintiff's attempt to impute Mathis's knowledge to other Defendants is inapplicable in a claim for deliberate indifference. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[I]it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction.").

defendant who knew, on the night in question, or had a reason to suspect, Plaintiff was prone to seizures and deliberately chose to not render him aid" was in error.

**Objection 6**

Plaintiff's sixth objection avers that the Report's findings fail to account for evidence showing that the sheet metal was a dangerous condition that had existed for a substantial period of time and was known by inmates and staff. This objection likewise lacks merit as the Report acknowledged Plaintiff's contention that the metal had been hanging down for years. [ECF No. 51, p. 19.] However, as noted several times, Plaintiff failed to identify any specific Defendant that had knowledge that the metal posed a substantial risk of serious injury or that Defendants disregarded that risk. Plaintiff's objection likewise fails to identify any specific Defendant with knowledge of the risk.

**Objection 7**

Plaintiff next argues the Report's findings are erroneous because the Magistrate Judge failed to consider that Plaintiff was ordered to attend occupational therapy after surgery, but never received therapy. This objection lacks merit because the Report does conclude that Plaintiff did not receive the ordered therapy. The problem for Plaintiff is that he failed to offer evidence showing that any of the named Defendants had actual knowledge of his therapy order and prevented such treatment. [ECF No. 51, p. 18]. For that reason, the Report recommended a finding in favor of Defendants. Because Plaintiff's objection again fails to identify any such individual with requisite knowledge, it is overruled.

**Objection 8**

Plaintiff's eighth objection opposes the Magistrate Judge's findings of fact. Plaintiff submits that the findings fail to adequately consider Mathis's deposition testimony. Although Plaintiff

7

identifies several portions of Mathis's deposition testimony, he fails to explain how such testimony was not properly considered. Accordingly, this objection fails to point to any specific error in the Report and is without merit.

**Objection 9**

Plaintiff next claims the Magistrate Judge's findings of fact fail to include a finding that Defendants Tice and Copeland were expressly informed by Plaintiff that he had a "history of seizures" and/or had "seizures in his sleep." Plaintiff cites to several portions of his own deposition for support of this objection. However, a review of his deposition testimony shows no specific allegations against Defendant Tice or Copeland. In fact, Plaintiff stated that he did not "even really know Copeland" when asked about allegations specific to Copeland. [ECF No. 47-1, p. 128.] Likewise, the initial screening forms that Plaintiff cites to, ECF No. 47-2, fail to indicate that Tice or Copeland would have been notified of Plaintiff's medical history. Accordingly, Plaintiff's objection is overruled.

**Objection 10**

Plaintiff next objects to the extent the Report fails to include a finding that Defendant Mathis had knowledge, both from previous experience with Plaintiff and also his intake, that he has a "history of seizures." This objection lacks merit given that the Report plainly states, "as testified by Mathis, Plaintiff '[had] been in jail before, and he's known to have seizures.'" [ECF No. 51, p. 14].

**Objection 11**

Plaintiff's eleventh objection claims the Magistrate Judge's findings of fact fail to include a finding that Defendants Brown, Copeland, Owens, Davis, Green, and Randall had been trained regarding "well checks" on individual cells but did not perform those checks on the night of July

8

29, 2017, and/or the morning of July 30, 2017. In support, Plaintiff cites to the deposition testimony of Alethea Brown Rhodes regarding the number of times she would normally check on inmates at night. However, Rhodes's testimony does not reference any training received by Copeland, Owens, Davis, Green, and Randall regarding well checks or their performance of such checks on the relevant night. Likewise, this testimony fails to indicate how Rhodes disregarded any training on the night in question or how such actions could constitute deliberate indifference to Plaintiff's needs. Plaintiff cites to no other support for such a contention. Accordingly, this objection lacks merit.

**Objection 12**

The twelfth objection takes issue with the lack of a finding that Defendant Green was on duty at the time Plaintiff cut his hand on a piece of sheet metal and failed to render immediate aid. Although the cited portion of Plaintiff's deposition does not reference Green,[2] he does state that he "sat there two, three to five minutes before they came. . . . Then when they did come and got me, they took me to the medical." [ECF No 47-1 p. 42.] Accordingly, Plaintiff's contention that any of the named Defendants, including Green, failed to render immediate aid is without merit given that only 2-5 minutes elapsed before prison officials responded and he was immediately taken for further medical treatment.

**Objection 13**

Similarly, Plaintiff next objects to the findings of fact failing to include a specific finding that Defendants Randall, Murdock, and Tyler were on duty, aware of Plaintiff's cut on August 17, 2017, and had a responsibility to act to ensure adequate medical care with respect to that injury.

---

[2] Although Plaintiff's deposition does not specify Green as the responding officer, other incident reports within the record show Green as the officer initially notified of Plaintiff's injury. [ECF No. 44-11.]

9

Again, Plaintiff's cited testimony fails to identify any specific Defendant including Randall, Murdock, or Tyler. However, other records do indicate Murdock and Tyler were on duty at the time of this incident. [ECF No. 44-11.] Regardless, as stated above, the officers that were on duty rendered immediate aid after Plaintiff cut his hand. Moreover, Tyler is not even a defendant named in this action or mentioned in the Report. Therefore, this objection is overruled.

**Objection 14**

Plaintiff then objects to the Magistrate Judge's factual finding that Plaintiff "failed to identify any specific Defendant who interacted with him during [the time between his intake and his initial seizure] including intake, much less one who was aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." Plaintiff avers that Mathis, Copeland, and Tice were noted as having been involved with his intake and informed of his seizure disorder.

As stated above, Mathis admitted to having prior knowledge of Plaintiff's seizure disorder and Plaintiff failed to offer evidence showing Tice and Copeland had any such knowledge. Regardless, Plaintiff failed to show how any of these Defendants acted with deliberate indifference to Plaintiff regarding his seizures. Accordingly, this objection is overruled.

**Objection 15**

Plaintiff goes on to object to the Magistrate Judge's factual finding that "at no point does [Mr. Sweeper] allege that he informed any of the Defendants, during the relevant time period, of his condition, that he was not taking his medication, or that he needed medication." Plaintiff avers that he specifically informed Mathis, Tice, and Copeland of his prescribed medications during intake in early July of 2017.

10

Even if Plaintiff had presented evidence that these Defendants were so informed at intake, Plaintiff's objection misses the mark. Assuming these individuals may have been informed of Plaintiff's prescriptions at intake, there is no evidence to suggest that any of them were later informed that he had been denied access to the requisite medication or that their own individual actions somehow constituted deliberate indifference to Plaintiff's medical needs. Thus, this objection is overruled.

**Objection 16**

Plaintiff also objects to the Magistrate Judge's conclusions of law. Plaintiff submits the conclusions fail to find his "history of seizures" and/or "seizure disorder" to conclusively be a "serious medical condition." This objection is wholly frivolous as the Magistrate Judge assumed for the sake of Plaintiff's motion that "Plaintiff's history of seizures . . . constitute serious medical needs." [ECF No. 51, p. 14.] Accordingly, this objection is overruled.

**Objections 17-20**

Plaintiff's next series of objections merely express Plaintiff's dissatisfaction with several of the Report's legal conclusions. However, these objections fail to explain why such conclusions are erroneous, offer support for alternative conclusions, or otherwise articulate reasoning to change the Report. Accordingly, these are not proper objections, and they are consequently overruled.

Given Plaintiff's objections to the Report's legal conclusions, the Court would also like to note the striking similarities between Plaintiff's deliberate indifference claims regarding the delay in receiving his prescription medications and the facts presented in the case of *Moss v. Harwood*, 19 F.4th 614, 625 (4th Cir. 2021). There, the court assumed that Plaintiff had requested prescription medication from prison officials and that delays in receiving those prescriptions could be considered a substantial risk of serious harm. However, the court ultimately concluded that:

> The defendants here are non-medical personnel. Even if, as Moss argues, it is generally well known that thyroid disease is a serious illness that may have serious consequences, it does not follow that these jail officials would have understood that they were facing an urgent situation, in which a weeks-long delay in receiving medication could cause a coma.

*Moss v. Harwood*, 19 F.4th 614, 625 (4th Cir. 2021).

> Moreover, even assuming that the defendants could be charged with knowledge of a substantial risk to Moss, Moss has produced no evidence that they also knew that their efforts to respond to Moss's requests were inappropriate in light of that risk. As the district court explained, the record makes clear that the defendants answered Moss's communications promptly and requested the appropriate medical appointments for him, and it includes no evidence of any deliberate decision to delay treatment. Moss suggests that a jury could infer this intentionality from a pattern of lengthy delays, but we disagree: Because the record indicates that the defendants – again, non-medical personnel – could neither directly provide Moss with medication nor control the speed with which their requested appointments were scheduled, the mere fact of delay, by itself, does not suggest a deliberate choice to ignore a risk.

*Id.* (internal citations omitted).

Similarly, Plaintiff here avers that he notified prison officials of his need for prescriptions at intake but has failed to show that these non-medical personnel could directly provide medication to Plaintiff. This is especially true given the presence of Quality Correctional Health Care employees and their role in providing healthcare to inmates.[3] Thus, just as summary judgment was proper in *Moss*, it is proper here.

**Objection 21**

Plaintiff next objects to the Magistrate Judge's conclusion that there is a lack of evidence "that indicates Defendants were responsible, or even able, to schedule the [therapy ordered after

---

[3] At all times relevant to this action, Orangeburg County contracted with Quality Correctional Health Care for health services within the Orangeburg County Detention Center.

surgery]." Plaintiff supports this objection by arguing that Defendants may not delegate their constitutional obligations to provide requisite medical care to other medical personnel.

Again, Plaintiff's failure to identify any individual Defendant is fatal to his objection. The Report concluded that there "is no indication Defendants were even aware of this issue [regarding ordered therapy]." Plaintiff fails to identify any such Defendant with the actual knowledge that Plaintiff had orders for therapy yet failed to effectuate those orders. Accordingly, this objection likewise lacks merit and is overruled.

**Objection 22**

Plaintiff next contests the finding that Defendants are entitled to Qualified Immunity because Plaintiff established that Defendants were aware of a serious medical condition and acted with deliberate indifference. As stated above, Plaintiff has failed to show that the Report was erroneous in concluding that no Constitutional violations occurred. Although unnecessary, the Report's resulting conclusion that Defendants are entitled to qualified immunity is likewise without error. Therefore, this objection is overruled.

**Objection 23**

Lastly, Plaintiff objects to the Magistrate Judge's finding that he "offered no evidence that Defendants had any knowledge that the metal posed a substantial risk of serious injury or that Defendants disregarded that risk." [ECF No. 51, p. 19.] In support, Plaintiff asserts that the Report recognizes that record evidence indicated that the issue had existed for "years," but then overlooks Mathis's testimony that she knew the prison was generally "in bad shape."

Even assuming the jail staff had knowledge of the alleged piece of metal being within reach of the showers (and there is no evidence of this), Plaintiff has failed to allege that any Defendant subjectively intended any harm to Plaintiff with respect to the alleged defect. Plaintiff does not

13

claim and cannot prove that any individual Defendant had information regarding the piece of metal or that any other inmate had suffered a similar injury previously. Accordingly, Plaintiff's failure to identify any specific Defendant with knowledge of this alleged dangerous condition renders this objection without merit.

Additionally, Plaintiff's reference to Mathis's general statements that the facility was in "bad shape" does not show that the jail staff had a sufficiently wanton state of mind in subjecting Plaintiff to the defect. Inadvertence or error is insufficient to rise to the level of punishment required by the Eighth Amendment. *See Whitley v. Albers,* 475 U.S. 312 (1986); *see also Graham v. Connor,* 490 U.S. 386, 398 (1989). Additionally, knowing that an aging facility may be in bad shape generally "is not the kind of extraordinary case of a palpable deprivation of the minimal requirements of civilized existence in which an inference of serious injury might be reasonable." *Strickler v. Waters*, 989 F.2d 1375, 1381–82 (4th Cir. 1993). Accordingly, the Report correctly concluded that Defendants are entitled to summary judgment on this claim.

As an aside, it appears as though the applicable standard of law for evaluating Plaintiff's conditions of confinement claim is somewhat unclear. Specifically, the Report cites to the two-factor test for challenging conditions of confinement under the Eight Amendment as set out in *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Additionally, both parties readily advance Eight Amendment jurisprudence in their respective arguments. However, the Report also indicates that Plaintiff here was a pretrial detainee and thus not yet subject to the Eight Amendment. Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979).

Regardless of the precise standard imposed, the result is the same as both inquiries hinge upon a finding of deliberate indifference. *Compare Strickler*, 989 F.2d at 1379 ("In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials."), *with Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) ("In cases where the government is accused of . . . failing to protect a [pretrial] detainee from a substantial risk of physical harm, conduct that amounts to deliberate indifference . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim.) (internal quotations omitted).

To prevail on a conditions of confinement claim pursuant to the Fourteenth Amendment, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmate's suffering. *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.).

The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a

15

prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citations omitted). "[A] plaintiff can make a prima facie case under this standard by showing that a substantial risk of serious harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Parrish*, 372 F.3d at 303 (internal quotations and citations omitted).

Here, although Plaintiff avers the overhead metal had existed in this facility for several years, he has failed to show that any of the named Defendants had knowledge that the metal which caused Plaintiff's injury existed or constituted a dangerous condition. Plaintiff cut his wrist on a piece of metal located above his head which had caused no problems prior. Plaintiff fails to show how this condition created substantial risk of serious harm. Under these circumstances, it cannot be said that any of the named officers knew of a substantial risk of serious harm, yet deliberately chose to ignore it. Accordingly, Plaintiff's claims must be dismissed.

In addition to Plaintiff's specific objections, the Court has conducted a review of those portions of the Report about which Plaintiff made no objections. Specifically, Plaintiff failed to object to the Report's conclusion that Plaintiff is in fact not deceased as alleged in his Complaint. Additionally, Plaintiff does not object to the Magistrate Judge's conclusion that "Ms. Angie" or Angela Lee, is not a proper party to this action and should be dismissed. Also, Plaintiff failed to object to the recommended dismissal of any claim based on supervisory liability. Upon full review of the Report, the Court finds no error.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report. After a *de novo* review of each part of the Report to which

Petitioner specifically objected, the Court hereby adopts the Report and Recommendation, ECF No. 51.

For the reasons discussed above and in the Report, Defendants' motion for summary judgment, ECF No. 44, is **GRANTED**.

    **IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

January 21, 2022
Florence, South Carolina